We'll hear the next case, United States v. Moore. Good morning, Your Honors. May it please the Court, I'm Edward Zas from the Federal Defenders of New York for Julissa Moore. The District Court in this case committed reversible error by excluding important and admissible defense evidence that would have supported the defendant's lack of knowledge defense. The sole issue at this drug courier trial was what did Ms. Moore know about the drugs that were in her bag or did she not? Did she consciously avoid finding out what was in her bag or not? One of the government's centerpieces was a 40-minute post-arrest interrogation by law enforcement. The government ended up only introducing about six minutes of that interrogation. But more important than the length of the interrogation was the fact that the defense could not introduce important parts of the interrogation that would have undermined the government's claim that she knew about the drugs. With respect to the post-arrest interrogation, there's two separate errors, related but separate. On at least four occasions in this interview, Ms. Moore denies knowing that there are drugs in her bag. The defense said, Judge, you've got to let us introduce that because the government is introducing other portions of the interrogation. The key portion being an admission by Moore that her cousin had given her this bag, that she knew her cousin had dealt in cocaine, that she knew her cousin, in fact, had sent people to the United States to bring drugs here. To the jury's ears, that sounds essentially like a confession. They would have naturally thought that if someone didn't know, they would have said, but I didn't know there were drugs in the bag. Well, that's precisely what the defendant said. But the district court wouldn't let us introduce that. If the statements had come in sort of on their own, they would normally be excluded as hearsay. But this was not coming in for its truth, and therefore we're not hearsay, because Rule 106- It's not coming in for the truth. What was it coming in for? What was it offered for? It was offered to complete the portion of the narrative the government had introduced. It's offered to show she did not know, right? So it was offered for the truth. No, it was not, Your Honor. It was being offered for the fact that she knew. Why is that relevant? It's relevant because the jury would have otherwise misinterpreted this recording. It would have been misleading to just leave the jury, as the jury was left, unaware that this woman, despite a 72 or 75 IQ, did in fact, although she admitted- The jury's argument to say, yes, she said I don't know, but you're not supposed to pay attention to whether that's true or not. Just pay attention to the fact that she said it. You wouldn't argue, I don't know that you tried it, but you wouldn't argue that to the jury, would you? Well, that would certainly be better than the way it came in, which it didn't come in at all. The jury didn't know. But, Your Honor- The jury would have said, she said she didn't know, and so you should think she's telling the truth. Even if that is so, and that may be so, it doesn't change the outcome. Because- Not that it's not introduced for its truth. Completeness is your hook to get it in, but it's offered for its truth. That is a plausible view, Judge. I don't want to disagree with that. I think there's actually a split on this, on when a Rule 106 statement comes in. Is it coming in for its truth, or is it coming in just to provide the fair context of what was said? In this case, you don't have to decide that. It didn't come in either for any purpose. Let's assume it should have come in, okay? Why wouldn't it have been harmless under the facts of this case? If it came in that she generally denied knowing that there were drugs, but the specific statements that also came in, that her cousin always brings drugs into the United States, sells cocaine in Guyana, sends cocaine to the U.S., and gave a particular person who had been arrested at JFK previously, and they checked that name, and sure enough, that's exactly what had happened. On the issues of conscious avoidance, independent of whether she said three times in the interview or five times in the interview, I didn't know it was drugs. I was never told it was drugs. Why wouldn't all that evidence not change the outcome in this case? Explain how a general denial would take away all those details that she gave to the agents. Because just to start with, with conscious avoidance, the question on conscious avoidance is a subjective question. Did the defendant, was she aware of a high probability that there were actually narcotics in the bag, but then consciously decided not to find out? The fact that she told the agents four times in this interview, although candid about other things, that she didn't know, could change the outcome. This was not a case of overwhelming My point is that's completely consistent with a conscious avoidance. People who consciously avoid say, I was never told, I never looked in the bag. It's not inconsistent with conscious avoidance for which there was overwhelming evidence of conscious avoidance based upon her own statement, right? Well, I think Your Honor's point is, I agree with you if what you're saying is the jury still might have convicted based on this, but they would have had the full picture. But the test for harmless error, first, the burden is on the government to show, depending on how the court views it, if it's a constitutional violation, if it really curtailed her defense, and this is not the only, this is not the only preclusion that happened. The government has to show, under Chapman, beyond a reasonable doubt, that there's no reasonable possibility that the error affected the verdict. Even if it's just treated as an ordinary evidentiary error, the government still has to show that there's no substantial probability that the a woman with a very low IQ, borderline intellectual functioning, there's no evidence that she was being paid for this, there's no evidence of any cell phone communications or other things, she's caught with cocaine in her bag at JFK. But that is not the kind of case that this court has previously described as overwhelming evidence. I just want to move from this denial of guilt, which is only one part of the exclusion. The agents asked Ms. Moore, when's the last time your cousin was here? The interview's taking place in October of 2016. She's unable to give an answer to this relatively simple question. She takes, she says, November. They say, November of last year. No, November of this year. Well, how could this be? This is October. And it goes on and on, it's almost like an Avedon-Costello routine until they're exasperated and they explain the calendar system to her. The judge kept this out as irrelevant, and if relevant, that it was outweighed by some unfair prejudice. The government then gets up in summation, and what does it say? It says, well, ladies and gentlemen, you heard the experts say that she has a low IQ, but they didn't give you any evidence about her real-world functioning. Why don't you assess that, ladies and gentlemen? Look at her words. Look at what she said during the interview. Well, isn't that completely unfair? Having kept out the portion of the interview that shows, indeed, that she has trouble answering basic questions about her cousin, can't keep track of the calendar, to then sum up and ask the jury, well, where's the evidence of her functioning? Well, it's there, you just kept it out so the jury didn't know. It's highly prejudicial. So if you view that exclusion with the sort of very one-sided way that her so-called confession comes in, there is a reasonable probability that the jury might have had reasonable doubt if it had learned the full picture. Judge Bianco, I agree. I'm not saying it's a sure thing. These things are never sure things. Most defendants who go to trial, as the Court knows, get convicted. But this was, as far as these cases go, a close case. And the jury, in the end, had virtually no, was not allowed to hear the evidence that she had limited real-world function. They weren't allowed to hear that she had denied on four separate occasions in this interview that these drugs did not belong to her, that she didn't know about them. It easily could have influenced the outcome. Unless the Court has any other questions, we'd ask you to vacate the judgment of conviction and remand for a new trial. Thank you. May it please the Court, good morning, Your Honor. Drew Rohl for the United States. This Court should affirm Judge Vitaliano, affirm the conviction. Judge Vitaliano's careful and deliberate evidentiary rulings were keeping out irrelevant, cumulative, prejudicial, and controversial evidence. There are three points that the defendant has raised, two of which we addressed earlier. But starting with the rule of completeness, taking a step back, to be clear, the defendant, as this Court had made clear in Williams, which we put in our 28-J letter, and well before Williams and Johnson, the defendant can't offer her statements of denials to prove, in fact, to the jury that she did deny, knowing there were drugs in the bag. That, of course, is hearsay. The question on the rule of completeness is simply, does the portions that the defendant proffers, which is her burden to show this nature of the proffered statement, does it explain? The Court allows, from the statement, the admission that she received the suitcase from her cousin, who she believed to be a drug dealer. Why wouldn't it help to make it complete to say, but I didn't know she contained drugs? Your Honor, because I believe, I think the statement, the denial of knowledge, is more akin to simply the opposite of what the jury may draw, that she did, in fact, know. And that doesn't explain the statement. It doesn't explain how she knows her cousin. Is the implication that when she received the suitcase from her drug dealer cousin, she must have known that it contained drugs, isn't that the implication? That's an inference the jury could draw, yes, Your Honor. Right. But why wouldn't the additional statement, but I didn't know it had drugs, why wouldn't that reasonably complete the statement? Your Honor, because I think the statements about her cousin and the prior drug-trafficking history, the facts that she was saying to the agents have nothing to do specifically with whether she had said, I knew when this person gave me the bag that there were drugs. It's an inference that can be drawn. It goes to conscious avoidance. But this is not, in rule of completeness, for example, if this defendant had said, gave a long explanation that the government were to offer, and then at the end of the statement said, you know what, everything I just said, I was joking. This entire interview, I was kidding. That's a very different case. That statement may explain some type of admission that the we said to the district court, if she had said, yes, I had the bag, but we didn't offer the statement that she said, well, because I was a bellhop, that would, in fact, explain this. If it had been done all in one sentence, would it come in if she said to the agent, I know my cousin sends drugs in, but she didn't do that on this occasion? Would that come in, that whole sentence come in? Your Honor, in understanding that those aren't these facts, I believe that would be very different and would explain. Is this an issue of linking clauses? Is that because she said it? Well, let's find out. How many sentences later did she say that I don't know? Your Honor, in fact, the statements that the defendant proffered came from a first part of the interview that happened many minutes before the uninterrupted minutes that the government offered that is being challenged was largely an uninterrupted audio tape transcribed and that is part of the record in the government's appendix, the exhibits. Uninterrupted. So this was not a failure to link clauses. These were simply two separate events. And the point is that if the defendant wants to deny knowledge, she can't avoid taking the stand in this case. And that's proper. This court has ruled that the defendant can't backdoor her denial and avoid cross-examination. Taking another step back, Your Honor, the defendant proffered numerous other statements she felt were helpful and admissible and the court allowed them. The court allowed the defendant to comment to the jury that there, in fact, was not a confession in this case. That was granted in limine prior to the start of trial. So the risk of any unfair understanding by the jury was mitigated by the fact that the defense can stand up and say you never heard a confession. The government objected to the statement coming in? Yes, Your Honor. We objected to heard false exculpatory denials coming in through the case agent in this case, Your Honor. But call it false exculpatory? I mean, that wasn't the basis of your objection. I mean, you tell us they're false in light of the jury's verdict. You didn't have the jury's verdict at the time you objected. Of course, Your Honor. We objected to You didn't want an exculpatory statement coming in? Yes, Your Honor, without being subject to cross-examination. Turning to the question of state of mind, there's a question of voluntariness raised in the briefs. The government will rest on its papers on that point that the judge's ruling under 403 was proper. But taking a step back on this question of the defendant's confusion about November of 2015 and November of 2016, the defense in this case, to be clear, only went to mens rea. And her argument was, I'm not guilty because I was tricked. I didn't know that there were drugs in my bag because I'm a gullible person. She chose to mount that defense not through offering a particular trait under 404b2, not to call witnesses to come and testify that, in fact, I'm tricked regularly, I'm very gullible, and you should consider that. She chose to mount an expert defense, to call an expert to testify that there are a class of people who are more likely to be gullible than others and that that class includes people who are intellectually disabled. I would note, as the government did from the beginning, we objected to this defense because there is no evidence, no proof that this defendant was a member of that class. She is not intellectually disabled. No expert found her to be intellectually disabled. And therefore, all of this testimony about there being a class of people who are more trickable than others was irrelevant. That was our objection. We lost that objection. However, the defendant was able to offer tremendous amounts of evidence about her IQ, her low performance on IQ tests, and generally her intellectual functioning that you don't see in drug courier trials. Two experts testified. So Judge Battagliano, in doing the 403 balancing, in fact considered the fact that the defendant had all of these other avenues to display her functioning and to talk to the jury about how she functioned, and that this point was prejudicial to the government because we could never probe, in fact, whether she was confused about November 15 or 16, or if she simply, like anyone in a high-pressure situation, made a misstatement which she apologized for on tape. But, Your Honors, even if there were any errors committed by Judge Battagliano in his careful weighing, all of that is harmless here. This was not a closed case. As Judge Bianco had recounted in our brief, this was a quintessential conscious avoidance case with the proof we offered was clear. The jury was out conservatively for less than three hours. And ultimately, the defendant was able to mount the defense she wanted to mount through all of the other avenues Judge Battagliano allowed her. Let me ask you this about the ultimate issue. If she had gotten on the stand and said, I knew my cousin was a drug dealer, I knew my cousin frequently handed suitcases to people to bring in, and she handed me a suitcase, and because she was a drug dealer, I suppose there was a fair probability there were drugs in here. But I didn't know for sure. I never opened it. I never saw her put it in. So I didn't know for sure. But if you press me on cross, I'd have to admit it was likely in view of her past. Is that enough for her knowledge? If on cross-examination she conceded that it would be obvious to a reasonable person I didn't use the word obvious. I just said likely. It's likely she did it, but I don't know for sure because I never looked. Would that be conscious avoidance? Your Honor, I believe it would. I believe we would argue that and the jury consider it. And turning very quickly to a point that counsel made earlier about the government's argument in summation, we disagree with the characterization of the summation that the government exploited any lack of evidence that Judge Battagliano's rulings had. When you read the summation, the government specifically was directing the jury to consider the fact that the expert the defendant retained was never given adaptive functioning evidence, evidence that the expert stated on direct and cross he would have found helpful. And we said to the jury, you don't have, you don't have to consider this expert who failed to do what he was retained to do. Just look at her statements. Look at how she was functioning in the room and we were directing them to her statements which were the chief evidence against her and the reason why this really wasn't a close case at the end of the day. And with no other questions, Your Honors, the rest of the papers. Thank you. We'll hear the rebuttal. Judge Newman and Judge Chianti, your questions about snippets or portions of the interrogation and the rule of completeness. First, the rule itself says, if a party introduces all or part of a writing or recorded statement, this was a recorded statement, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement, doesn't have to be the same statement, that in fairness ought to be considered at the same time. Judge Newman, you asked if the defendant had said this right in the course of the same couple of sentences, would it be error or would it make a difference? Well, if you look at the appendix, page 115, it happens exactly as Your Honor imagined it. The agent says, okay, so your cousin was responsible for sending Teresa Ferreira, that's the other woman, to the United States. Answer, no, Teresa came with her...but they all are the same link. Agent, the same link? Defendant, yes. Now this is the part the jury didn't hear. Agent, okay, so you had to, you had to, with giving her you a suitcase and you knowing what she does. Defendant, not knowing that she would have done that. Agent, well, you know the line of work she's in, you know she's a drug dealer, right? Defendant, yes, but I know she...because when I got it, I didn't. I don't know how it was set or what, but when I got it, it was just naturally a normal to my feelings. I know what for feel, for, or not. How in the world can the government keep that from the jury? Same conversation. Did any part of that passage that you just read come in? None. And the part that came in is on what page? It's the predecessor, right before that. On page 114? I'm on 115. Right, but what part came in? That's what we're trying to...in relation to the part...this is the part you wanted to come in that did not come in. What part came in? That's right. I apologize. I'm going to have to shift a little because there's an exhibit, government exhibit, 18B with a little t. You'll find it on... We have the page numbers in the appendix, too, so the same page numbers, I think. What page? Yes, I'm sorry. It's in the government appendix, though. It's in the government's appendix. It's at G.A. 29 to 30. Well, I'm trying to figure out in relation to what you just read us. Yes. It was not allowed, which is what you wanted. Yes. What was allowed so that I can compare and see whether indeed it follows or whether it's a different part of the interview? Yes. Are you able to do that for us? I'm going to try to do it for you on the fly, Your Honor. I'm sorry. We can figure it out later. Yes, I should have given it to you with some sort of red lining so you could see what's taken out, but let me just... We'll sort it out later. There are two passages that talk about Ms. Ferreira. Is that your point? Yes, I believe so. I think the part where it cuts off for the jury, you'll see on my appendix, the defendant's appendix, at page 114. All right. I have 114, and what is the part that came in? It's toward the middle of the page. They're asking her to spell the last name of this woman, and the agent says, Teresa Ferreira. Okay, tell me more about that. She got arrested here. She was with your cousin. Let me just see if that's where it does end. Anyway, Your Honor, I... We'll figure it out. The important point, of course, is that it left the jury with this apparently knowledgeable woman who's essentially saying, yeah, she's a drug dealer. She gave me the bag. She's given other people the bag without the additional denial of drugs. Now, we submitted our own 28-J letter last night, which you can see in the slide, and we cited a case in which the government sort of did the same thing. They introduced a defendant's statement. He was accused of viewing child pornography on a computer, and when he was interrogated, he said, I was in the library. I used the computer to view my email. That came in. He went on to say, but I didn't look at child pornography. You say today, but it's a violation of law. You're using it to accuse someone of abusing discretion, right? Yes, yes. But an error of law is always an abuse of discretion, and if you look at the judge's ruling, which is also in the government's appendix at page 17, it's basically an ironclad ruling. If the government's not introducing it, you're not introducing it. That's not the proper analysis under the rule of completeness. The government kept talking about a careful weighing of factors to which you would ordinarily grant great deference, but these are, as we point out in the brief, a bunch of legal errors, misinterpreting the standard for relevance, misinterpreting the standard for unfair prejudice, misinterpreting the rule of completeness. So there's no deference. It's de novo. I just want to go back to Judge Newman's question on conscious avoidance. Conscious avoidance is often given, but it is an absolute defense to conscious avoidance. No matter how obvious the incriminating facts may have been, if the defendant honestly believes that there are not drugs in her bag, the jury's instructed they must acquit. Whether it's foolish, reckless, negligent, they must acquit. Under that test here, with a woman of this IQ... She didn't say that. She didn't say, I honestly believe there are not. Apparently what she said is, I don't know if there are. She said, I did not know there were drugs in the bag. Yes. She didn't say, I was sure there were not. Well, that's true. That's true. That's a matter for the jury to weigh and assess its relevance. On the Ferreri, apparently you're telling us now there are two passages about Ms. Ferreri. The government offered the earlier one, which was not coupled with the denial of knowledge, but they did not offer the second one, which was essentially coupled with the denial of knowledge. As I stand here today, I think that's right, but perhaps a post-argument letter might clarify it. The transcript is what it is. The transcript is what it is, yes. We can sort it out. Yes. Thank you. Thank you so much.